# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM LAPORTE COLLAZO, | : | |
|    *Plaintiff,* | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 23-CV-3439 |
| | : | |
| SUPERINTENDENT | : | |
| SCI CAMP HILL, *et al.*, | : | |
|    *Defendants.* | : | |

## MEMORANDUM

**PAPPERT, J.**                                                                           **December 14, 2023**

William Laporte Collazo, a convicted prisoner currently incarcerated at SCI Greene, filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983, asserting violations of his constitutional rights. Collazo asserts claims against the Superintendents of SCI Camp Hill, SCI Coal, SCI Chester, SCI Smithfield, and SCI Laurel Island.[1] (Compl. at 2.) Currently before the Court are Collazo's Complaint ("Compl." (ECF No. 1)), his Motion for Leave to Proceed *In Forma Pauperis* and his prisoner trust fund account statement (ECF Nos. 5, 2).

For the following reasons, the Court will grant Collazo leave to proceed *in forma pauperis* and will dismiss with prejudice his claims based on his COVID infection. The

---

[1] The Court understands Collazo to be referring to SCI Laurel Highlands, which is not included on the docket as a Defendant. The Court notes further that the docket of this case lists the prisons as Defendants rather than the Superintendents of the prisons. This is because Collazo listed the prisons in the caption of the form he used to file his Complaint, even though he listed the Superintendents as the Defendants on his form Complaint. (*See* ECF No. 1 at 2.) The Clerk of Court will be directed to amend the docket to reflect that the Superintendents are the named Defendants, and to add the Superintendent of SCI Laurel Highlands as a Defendant.

remainder of Collazo's Complaint will be dismissed without prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Collazo will be granted leave to file an amended complaint.

I[2]

Collazo's allegations are brief and undeveloped. He contends the events giving rise to his claims occurred at all of the named correctional institutions from approximately January 2020 through September 2021. (Compl. at 2.) During that time, Collazo alleges that he was poisoned by contaminated water and exposed to mold and asbestos in cells and showers. He also alleges that the prisons sold cigarettes. (*Id.*) Collazo alleges that these conditions resulted in his developing kidney cancer. (*Id.* at 3.) Collazo also alleges that while at SCI Chester, he was exposed to COVID-19 during lockdown, which resulted in him contracting the virus. (*Id.*) He claims that while at SCI Chester, he experienced pain and suffering, although it is unclear whether this was the result of his cancer treatment, the result of COVID, or something else. (*Id.*) Collazo describes injuries including removal of his left kidney, blood loss, scars, swelling, head and body aches, and the need for x-rays, MRIs, CT scans, bloodwork, medication, blood transfusions, and a wheelchair. (*Id.*)

Collazo claims he sent written requests to unnamed staff, the Medical Department, and the Health Administration, and spoke with an unnamed Deputy

---

[2] The allegations set forth in this Memorandum are taken from Collazo's Complaint. (ECF No. 1.) The Court adopts the pagination supplied by the CM/ECF docketing system. Additionally, the Court includes facts reflected in the publicly available state court docket, of which this Court may take judicial notice. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

Superintendent about his medical problems, and about a delay in his receipt of medical care. (*Id.* at 5.) It is not clear when or where these communications took place.

Collazo does not specify the nature of his claims. He requests an award of money damages to compensate him for pain and suffering, exposure to COVID-19, and PTSD (which the Court understands to refer to post-traumatic stress disorder).[3] (*Id.*)

## II

The Court will grant Collazo leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[4] Accordingly, his Complaint is subject to screening pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and must be dismissed if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quotations

---

[3] Collazo also requests release from custody and commutation of his sentence. (*Id.* at 5.) The Court is not empowered to grant this relief in a 1983 action. "[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *Jaffery v. Atl. Cty. Prosecutor's Office*, 695 F. App'x 38, 41-42 (3d Cir. 2017) (*per curiam*) ("[T]o the extent Jaffery seeks dismissal of the charges against him as a result of constitutional violations, such relief is only available through a writ of habeas corpus."); *Duran v. Weeks*, 399 F. App'x 756, 759 (3d Cir. 2010) (*per curiam*) ("[T]o the extent that Duran is seeking dismissal of the charges against him as a result of constitutional violations, he is essentially asking for relief only available through habeas corpus."). Accordingly, this claim is dismissed without prejudice to Collazo filing a *habeas* petition seeking this relief.

[4] Because Collazo is a prisoner, the Prison Litigation Reform Act requires him to pay the full filing fee in installments regardless of the outcome of this case.

omitted). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Collazo is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

III

Since his used the Court's preprinted form available to prisoners to assert civil rights claims, the Court understands Collazo to be asserting constitutional claims against the Superintendents of the five named prisons based on his cancer diagnosis, the consequences of the related treatment and his exposure to COVID-19. Collazo's claims are best construed as Eighth Amendment claims[5] against the named Superintendents, based on their roles at the named correctional facilities. *See Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 248 (3d Cir. 1999) ("We apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name.") The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v.*

---

[5] Collazo's allegations are too undeveloped to permit the Court to discern the nature of the claims asserted. Specifically, it is not clear whether Collazo is challenging the conditions of his confinement or whether he is asserting claims based on deliberate indifference to his serious medical needs. As Collazo will be permitted to amend his Complaint, he will have the opportunity to clarify this issue.

*Atkins*, 487 U.S. 42, 48 (1988). "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)). *See Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

A

In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998). "Suits against high-level government officials must satisfy the general requirements for supervisory liability." *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017). Collazo asserts his claims against the Superintendents of the named correctional institutions, presumably based on their supervisory roles at those facilities. However, liability under § 1983 cannot be predicated on a *respondeat superior* basis. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 22015); *Robinson v. Delbalso*, No. 22-2378, slip op. at 3-4 (3d. Cir. Nov. 28, 2022) (*per curiam*). There are, however, "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established

5

and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). To set forth a claim for supervisory liability under the policy-and-practice element of supervisory liability, a plaintiff must:

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure.

*Chavarriaga v. New Jersey Dept. of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015) (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001)). "Put another way, the [plaintiff] must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the [plaintiff's] risk of injury and must establish a link between the supervisor, the act, and the injury." *Id.*

"Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.* Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)).

"Under Section 1983, a supervisor may be liable for [his or her] failure to train or supervise employees. . . ." *Whitfield v. City of Philadelphia*, 587 F. Supp. 2d 657, 666 (E.D. Pa. 2008). A claim for supervisory liability or liability based upon a failure to train involves four elements: (1) that an existing policy created an unreasonable risk of constitutional injury; (2) the supervisor was aware of this unreasonable risk; (3) the supervisor was indifferent to the risk; and (4) the injury resulted from the policy or practice. *See Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989). Where a need for "more or different training . . . is so obvious, and the inadequacy so likely to result in constitutional violations, that the failure to train . . . can fairly be said to represent official policy," *City of Canton v. Ohio*, 489 U.S. 378, 390 (1989), and that failure to train "actually causes injury," a supervisor may be held liable. In addition,

> In resolving the issue of [supervisory] liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [supervisor], for the officer's shortcomings may have resulted from factors other than a faulty training program. . . . Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training. . . . Moreover, for liability to attach . . . the identified deficiency in [the] training program must be closely related to the ultimate injury.

*Id*. at 390-91.

Collazo does not allege that any of the Superintendents established a policy, practice or custom that resulted in the conditions of which Collazo complains. He also does not allege whether or how the Superintendents themselves participated in the alleged violations. Additionally, Collazo does not allege that the Superintendents were aware of and indifferent to an existing policy that created an unreasonable risk of constitutional injury and which resulted in injury to Collazo. Accordingly, he has not

stated a plausible supervisory liability claim against the Defendants and the claims against them will be dismissed without prejudice.

Collazo will be granted leave to amend his claims. If he chooses to amend his Complaint, Collazo should be mindful of the need to describe in as much detail as possible the conduct engaged in by each Defendant, or by any other individual personally involved in Collazo's medical care or other treatment while incarcerated. If Collazo cannot identify an involved individual by name, he may identify them as "John/Jane Doe" defendants. Collazo should, to the extent possible, "flesh out [his] allegations by . . . explaining in [the] amended complaint the 'who, what, where, when and why' of [his] claim." *See Gambrell v. S. Brunswick Bd. of Educ.*, No. 18-16359, 2019 WL 5212964, at *4 (D.N.J. Oct. 16, 2019). Additional instructions regarding amendment are included in the Order accompanying this Memorandum.

B

Collazo broadly alleges that he was exposed to and contracted COVID-19 while incarcerated at SCI Chester. (Compl. at 3.) He seeks recovery for a variety of physical symptoms and the Court understands Collazo to be claiming that some of these physical ailments are the consequence of his COVID infection. (*Id.*)

In its decision in *Hope v. Warden York County Prison*, 972 F.3d 310, 325-31 (3d Cir. 2020), the United States Court of Appeals for the Third Circuit affirmed that "[t]o establish deliberate indifference [in the COVID-19 context, the prisoner plaintiffs] must show the Government knew of and disregarded an excessive risk to their health and safety." *Id.* at 329 (citing *Nicini v. Morra*, 212 F.3d 798, 811 (3d Cir. 2000)). The Court of Appeals further held that "[t]he context of the Government's conduct is essential to determine whether it shows the requisite deliberate indifference," and that, in

evaluating this context, a reviewing court must defer to the expertise of both medical officials and jail administrators, and not assume a constitutional defect where concrete action has been taken in response to the COVID-19 pandemic as constitutional rules "are not subject to mechanical application in unfamiliar territory." *Id.* at 329-30 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998)). Thus, where the facility has taken concrete steps toward mitigating the medical effects of COVID-19, a prisoner will fall "well short" of establishing that the facility and its staff were deliberately indifferent toward his medical needs in light of the virus even though they cannot entirely "eliminate all risk" of contracting COVID, notwithstanding even serious preexisting medical conditions the prisoner may have. *Id.* at 330-31; *see also Mincy v. Governor of the Commonwealth of Pennsylvania*, No. 21-3263 (3d Cir. Sept. 9, 2022) (*per curiam*) (affirming dismissal of amended complaint and the finding that further amendment would be futile where "many preventative measures that were taken from the start of the pandemic, including the suspension of in-person visits, screening of staff for the virus, inmate quarantines, and the provision of masks and cleaning materials. In light of these measures and the unprecedented and evolving nature of the pandemic, Mincy does not have a plausible claim that prison officials disregarded an excessive risk of harm."); *Muata v. Hicks*, No. 21-3210, 2022 WL 2526692, at *1 (3d Cir. July 7, 2022) ("Even if plaintiffs could show that Slaughter and Hicks knew of the risk posed by COVID-19, despite its unprecedented and unpredictable nature, they have failed to allege that either defendant disregarded that risk when creating the prison's policies.")

Collazo alleges only that he was exposed to and contracted COVID-19. He does not allege where this occurred, and does not allege which, if any, of the Supervisors named as Defendants were responsible for his exposure to the virus, or how the

9

exposure constituted deliberate indifference to Collazo's medical needs. Even if he had done so, Collazo's diagnosis alone is an insufficient basis upon which to establish a constitutional violation. *See Hope*, 972 F.3d at 330 (explaining that the Constitution does not require the government to entirely eliminate the risk of contracting COVID-19 in a prison setting, stating "[plaintiffs] argue that the Government must eliminate *entirely* their risk of contracting COVID-19. That task is not the constitutional standard, however."); *Adames v. Pistro*, Civ. A. No. 21-2855, 2021 WL 2903064, at *2 (E.D. Pa. July 9, 2021) (dismissing on screening a *Bivens* claim asserting deliberate indifference based solely on exposure to COVID-19 in prison). Accordingly, Collazo's deliberate indifference claims against the named Superintendents based on his COVID infection are not plausible and will be dismissed with prejudice.

## IV

For the reasons stated, the Court will grant Collazo leave to proceed *in forma pauperis* and will dismiss his claims based on his COVID infection with prejudice. The remainder of Collazo's Complaint will be dismissed without prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Collazo will be granted leave to file an amended complaint. An appropriate Order follows.

                **BY THE COURT:**

                */s/ Gerald J. Pappert*
                **GERALD J. PAPPERT, J.**